UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARTIS B.,[1]

                                                  Plaintiff,                  DECISION AND ORDER

-vs-

                                                                   1:24-cv-00075-MAV

COMMISSIONER OF SOCIAL SECURITY,

                                                Defendant.

---

## INTRODUCTION

Plaintiff Artis B. ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of the United States Social Security Administration ("Commissioner"), denying Plaintiff's application for Supplemental Security Income ("SSI"). *See* ECF Nos. 1, 1–1; 42 U.S.C. §§ 405(g), 1383(c)(3). The parties filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, and Plaintiff filed a reply brief. ECF Nos. 6, 8, 9. For the reasons set forth below, the Court grants Plaintiff's motion, ECF No. 6, to the extent that the matter is remanded for further administrative proceedings, and denies the Commissioner's cross-motion, ECF No. 8.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

---

[1] The Court's Standing Order issued on November 18, 2020, directs that "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-governmental party will be identified and referenced solely by first name and last initial."

1

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Applications

In February 2021, Plaintiff protectively filed applications for SSI, alleging a disability onset date of July 31, 2018, due to a traumatic brain injury ("TBI") sustained during his military service, anxiety and depression, degenerative joint disease, specifically over the metatarsophalangeal joint of the right foot, gout, and osteoarthritis in his right arm/elbow stemming from a fracture of his right humerus during his military service. Administrative Record ("AR") at 37, 256.[2] His claim was initially denied by the Social Security Administration ("SSA") on June 7, 2021, and denied on reconsideration on November 2, 2021. *Id.* at 113, 130.

## II. Plaintiff's Hearing Before the ALJ

Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was originally set for March 15, 2022. *Id.* at 59. Plaintiff did not appear, but his attorney did on his behalf. *Id.* at 61, 63. She indicated that Plaintiff had recently become homeless, was "struggling" with multi-substance use disorder, "suffering for quite some time with a traumatic brain injury," a variety of mental health impairments including depression and anxiety, and had "alleged degenerative joint disease, nerve damage throughout his bilateral legs, sleep apnea, as well as gout and GERD." *Id.* at 61–64. The ALJ noted that Plaintiff's attorney had requested more time to produce additional records from, among other providers, Millard Fillmore Hospital associated with a gout flare-up, and the United States Department of

---

[2] When referencing the page number(s) of citations to the administrative record in this Decision and Order, the Court cites to the SSA citations located at the bottom right of the papers.

2

Veterans Affairs' (the "VA") Medical Center in Buffalo, New York. *Id.* at 62. Plaintiff's attorney clarified that Plaintiff was receiving ongoing treatment from the VA Medical Center. *Id.* The ALJ questioned the vocational expert ("VE") on whether there were unskilled jobs at a full range of medium work available in the national economy. *Id.* at 65. The VE listed a linen room attendant, counter supply worker, and hospital food service worker. *Id.* at 65–66. She then confirmed that there would not be any jobs available "if the claimant were unable to respond appropriately to supervision or criticism from supervisors," that "[l]ess than ten percent" of off-task time outside of regularly scheduled breaks would be accepted, and that "less than one absence or arriving late or leaving early per month" would be accepted for entry-level, medium-work, unskilled jobs. *Id.* at 66–67.

The hearing adjourned and was reconvened on October 14, 2022, via video conference before the same ALJ. *Id.* at 33, 35, 59. Plaintiff appeared and was represented by the same attorney. *Id.* at 35, 61. His attorney noted at the outset that, given Plaintiff's circumstances, Plaintiff would "grid out" if he were found to be limited to light (or sedentary) work. *Id.* at 37; *see Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-00580 (SN), 2019 WL 1331399, at *4 (S.D.N.Y. Mar. 25, 2019) ("A claimant 'grids out' when his age, education, work experience, and [residual functional capacity] profile are defined as *per se* disabled under the Social Security Administration's regulations. (citing 20 C.F.R. § 404, subpt. P, App. 2)).

Plaintiff was born in 1963 and was fifty-nine years old on the day of the October hearing. *See id.* Plaintiff lives alone in a house in the Buffalo area, has a high school

3

diploma, and completed an associate's degree. *Id.* at 38, 41, 54. In May or June 2022, Plaintiff started receiving disability benefits from the VA. *Id.* at 38–39. He testified to physical symptoms stemming from his back, chronic pain, gout, and headaches. *Id.* at 39–41, 47. Plaintiff noted that his pain and headaches are being treated with medication and that he last received any other form of treatment for his back in 2020, with the VA. *Id.* at 39–40. He reported that he gets headaches several times a month, "not every day," and his symptoms last for about an hour with medication, and longer without. *Id.* at 40. Plaintiff specifically highlighted that his gout "has really been causing [him] problems, especially with standing and stuff, pain on a regular basis." *Id.* at 47.

Though he lives alone, he testified that his arthritis and gout causes him difficulties getting in and out of the bath tub and standing up, and noted he has handrails in his bathroom because of joint pain in his knees, back, feet. *Id.* at 42. He does his own laundry, drives, tries to clean his home once a week "because it takes [him] awhile," only cleaning portions at a time because he "can't stand that long." *Id.* He explained that the pain will require him to stop his chores to "sit down for a while and relax" for about 10 to 20 minutes before being ready to resume. *Id.* at 51. Plaintiff testified to being able to stand up for a half hour at a time without having to sit or lie down. *Id.* After that point, he has "joint paint that'll shoot through [his] back, through [his] legs, causing [his] knees to . . . feel weak." *Id.* at 43. He was given a cane when he was initially diagnosed with gout but does not use it much. *Id.* Plaintiff testified to only being able to sit for an hour at a time due to his back and not being able to

walk from longer than a half hour. *Id.* at 43–44. He explained that his arthritis "affects his fingers" on occasion, and he has trouble grabbing things. *Id.* at 44. When asked how much weight he could lift or carry comfortably, Plaintiff estimated 5 to 10 pounds, but still not "for a long time," and he testified that lifting over his shoulders causes him pain. *Id.* at 44–45.

Plaintiff's "typical day mainly is just staying in the bed," and he doesn't "go anywhere unless [he] [has] to." *Id.* at 45. He said he only goes to the grocery store once a month and only when he needs something. *Id.* at 48–49. He also testified to making meals at home, sitting outside, and that he does enjoy watching television, reading, and listening to music, but "[l]ots of times . . . [he's] not interested even in watching TV or anything because of . . . [his] anxiety." *Id.* at 45–46. He also noted that "it's hard to focus on, keep attention. It takes a long time to read a book. . . . But [his] normal day, though, [he] can read a book of things that [he] likes." *Id.* at 46.

Plaintiff explained that he was receiving active mental health treatment, but that his VA counselor retired 10 months ago, and he had not yet met his new counselor though she'd been able to maintain his prescriptions. *Id.* at 41. He reported that the medications prescribed for his depression and anxiety make him "less social" and "not as interactive with people." *Id.* at 47. Plaintiff noted that he does not feel comfortable around large crowds or strange people, including "work environment(s)," and only feels comfortable with his family. *Id.* at 46. He briefly noted a history of "anti-social behavior," "issues working with people sometimes," and "anger issues." *Id.* at 48. He said his "anxiety attack[s]" are "severe," and he might not be able to

concentrate on anything else while it's happening. *Id.* at 50. He explained that he's learned some coping mechanisms through therapy, but said "it causes issues socially . . . that's why I like to be by myself." *Id.* Plaintiff also reported having memory problems that he tries to manage himself through reminders, etc. *Id.* at 49.

A different VE testified and identified the following unskilled, medium-work jobs available in the national economy: hospital cleaner, kitchen helper, and hand-packager. *Id.* at 54–55, 59. She opined that for these types of work, a claimant could be off-task up to ten percent of the workday and could miss "[j]ust one day per month" of work. *Id.* at 55–56. The VE then answered in the affirmative that a claimant could perform unskilled, medium-work jobs if he has "the capacity to remember, understand, and carry out simple instructions, could use judgment to make simple work-related decisions[,] . . . adapt to occasional and routine changes in the workplace, and could have occasional interaction with supervisors, coworkers, an the general public." *Id.* at 56.

### III. The ALJ's Decision[3]

To be eligible for Supplemental Security Income, a person must be aged, blind, or disabled, and must meet certain requirements pertaining to income and assets. 42 U.S.C. § 1382(a). A person is disabled for the purposes of SSI if they are unable "to engage in any substantial gainful activity by reason of any medically determinable

---

[3] The facts referenced herein were found by the ALJ, *see* AR at 18–27, as supplemented by the administrative record.

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 1382c(a)(3)(A).

The ALJ issued a decision on October 26, 2022, concluding that Plaintiff was not disabled under the Social Security Act (the "Act"). AR at 18, 27; *see* 42 U.S.C. § 1382c(a)(3)(A). At step one of the Commissioner's five-step, sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity over the relevant period. *Id.* at 20.

At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease constituted a severe impairment. *Id.* The ALJ found that "the record fails to show that the claimant's history of traumatic brain injury, history of gout, obesity, substance abuse, depressive disorder and anxiety disorder have more than a de minimis effect on his ability to perform work activities. As such, these impairments are considered non-severe." *Id.*

---

[4] The Social Security Administration has established a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. *McIntyre*, 758 F.3d at 150; *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

After employing the special technique,[5] the ALJ determined that Plaintiff's medically determinable mental impairments posed only "mild" limitations in three of the four functional areas, and posed no limitations in the functional area of concentrating, persisting, or maintaining pace, informing the finding they were non-severe. *Id.* at 22–23. After confirming that none of Plaintiff's impairments, or a combination thereof, met or medically equaled one of the listed impairments in the Listings at step three, the ALJ proceeded to the RFC assessment. *Id.* at 23.

The ALJ concluded that Plaintiff retained the RFC to perform less than the full range of medium work. *Id.* at 23 (citing 20 C.F.R. § 416.967(c). Specifically, the ALJ found that Plaintiff "can sit six hours and stand/walk six hours in an eight hour workday; lift/carry fifty pounds occasionally and twenty-five pounds frequently; frequently climb, kneel, crouch, crawl and stoop; and must avoid working at unprotected heights and with hazardous machinery." *Id.* Plaintiff had no past

---

[5] When a claimant alleges mental impairments in support of their claim of disability, the ALJ must supplement steps two and three of the standard five-step analysis with what is known as the "special technique." *See* 20 C.F.R. § 416.920a; *Ornelas–Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016). This technique requires the ALJ to determine first whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 416.920a; *see Ornelas–Sanchez*, 632 F. App'x at 49.

If the claimant is found to have such an impairment, the ALJ must rate the degree of functional limitation resulting from the impairment(s) across four broad functional areas, known as "Paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting and managing oneself. *See* 20 C.F.R. § 416.920a(c); 20 C.F.R. Part 404, Subpart B, Appendix 1 §§ 12.00(E)(1)–(4); *see also Ornelas–Sanchez*, 632 F. App'x at 49 (using pre-2017 amendment descriptions of the four functional areas).

Based on the record, the ALJ must make a finding as to the degree of any limitations in each functional area, using assessments of "none," "mild," "moderate," "marked," and "extreme," *see* 20 C.F.R. § 416.920a(c), which in turn informs whether the ALJ deems the mental impairment "severe" or "non-severe," *see id.* § 416.920a(d).

relevant work, thus, the ALJ proceeded to step five. *Id.* at 26. Given Plaintiff's "advanced age," education, work experience, RFC, and the VE's testimony, the ALJ determined that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy despite his limitations which erode the unskilled medium occupational base." *Id.* at 26–27.

Plaintiff requested review by the Appeals Council, which was denied, rendering the ALJ's order on Plaintiff's SSI claim the final decision of the Commissioner. *Id.* at 1. This appeal followed.

## LEGAL STANDARD

Congress has authorized federal courts to engage in limited review of final Social Security benefits decisions. *See* 42 U.S.C. § 405(g). The Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See id.*; *Rucker v. Kijakazi,* 48 F.4th 86, 90–91 (2d Cir. 2022).

"'Failure to apply the correct legal standard constitutes reversible error, including in certain circumstances, failure to adhere to the applicable regulations.'" *Douglass v. Astrue,* 496 F. App'x 154, 156 (2d Cir. 2012) (quoting *Kohler v. Astrue,* 546 F.3d 260, 265 (2d Cir. 2008) (remanding for non-compliance with regulations)). Federal courts review *de novo* whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles. *See Johnson v. Bowen,* 817 F.2d 983, 986 (2d Cir. 1987).

If the reviewing court is satisfied that the ALJ applied the correct legal

standards, then it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022) (noting it is not a federal court's function to determine *de novo* whether a plaintiff is disabled). "The substantial evidence standard means once an ALJ finds facts, [the Court] can reject those facts only if a reasonable factfinder would have to conclude otherwise." *Id.* (quotations and emphasis omitted); *see Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (reiterating "substantial evidence" is "more than a mere scintilla" and not a high evidentiary burden to satisfy). In other words, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *Schillo*, 31 F.4th at 74 (quotation omitted). The Court "require[s] that the crucial factors in any determination be set forth with sufficient specificity to enable [it] to decide whether the determination is supported by substantial evidence." *Id.* (quotation omitted).

## DISCUSSION

Plaintiff raises two challenges on appeal, arguing that the ALJ failed to evaluate three of Plaintiff's Compensation and Pension examinations conducted by VA physicians, and failed to "provide valid reasoning for finding the two physical consultative examinations unpersuasive." ECF No. 6 at 1.

The Commissioner counters that the ALJ was not required to evaluate Plaintiff's VA Compensation and Pension examination records because they "do not rise to the level of medical opinions because they do not include specific functional

limitations," and determinations of other agencies are not binding on the SSA. ECF No. 8-1 at 6–8. In any event, the Commissioner contends, these examination records are not inconsistent with the ALJ's RFC determination, and even if they were, the substantial evidence standard of review would preclude remand. *Id.* at 9–10. In response to Plaintiff's second challenge, the Commissioner argues that the ALJ properly used his "discretion as the finder of fact" in evaluating the opinions of consultative examiners Dr. Dantoni and Dr. Liu, and substantial evidence supports the ALJ's decision. *Id.* at 10–13.

Plaintiff's reply brief emphasizes that SSA regulations require an ALJ to consider "supporting evidence underlying other agencies' disability determinations" even though another agency's ultimate disability determination is not binding on the SSA. ECF No. 9 at 1–2. Plaintiff also counters that the Commissioner's remaining arguments are improper post-hoc rationalizations of the ALJ's erred decision. *Id.*

Because the Court finds that the ALJ committed legal error, to Plaintiff's prejudice, by not evaluating Plaintiff's VA Compensation and Pension ("C&P") examinations, remand is warranted.

Plaintiff highlights a January 2020 C&P examination by psychologist Dr. Carol Jo Descutner, an April 2019 C&P examination by physician's assistant Alice Barber for osteoarthritis and "residuals of fracture" in Plaintiff's dominant arm, and a July 2018 C&P examination for a neurological and TBI assessment by psychiatrist Dr. Hillary Tzetzo as being wholly absent from the ALJ's decision. ECF No. 6 at 8–9.

Dr. Tzetzo conducted an in-person examination of Plaintiff, having reviewed

his VA records including his prior C&P examinations. AR at 452, 459. Dr. Tzetzo was the physician who made the initial diagnosis of Plaintiff's TBI, which was caused in 1990 when Plaintiff fell from a second story barracks, also resulting in a fractured right elbow, several bruised ribs, and a "concussion." *Id.* at 453. Plaintiff reported to Dr. Tzetzo that he has had headaches "ever since" the incident but no seizures. *Id.* Dr. Tzetzo conducted an "[a]ssessment of facets of TBI-related cognitive impairment and subjective symptoms of TBI," the only abnormal complaint by Plaintiff being "mild memory loss (such as having difficulty following conversation, . . . ), attention, concentration, or executive functions." *Id.* at 454. Dr. Tzetzo administered an objective diagnostic test called "MOCA," revealing Plaintiff had various lapses in memory and trouble with "visuospatial/executive tasks." *Id.* at 455. The C&P examination report proceeded to discuss "[a]dditional residuals, other findings, diagnostic testing, function impact and remarks." *Id.* Dr. Tzetzo noted Plaintiff had a history of migraine headaches, and she conducted a corresponding "Disability Benefits Questionnaire," which found that Plaintiff has a "prostrating attack" of migraine headache pain once every month on average, and that he suffers with associated nausea, sensitivity to light and sound, and pain on both sides of his head. *Id.* at 456–58.

Dr. Tzetzo found that Plaintiff's "residual conditions attributable to a [TBI] impact his . . . ability to work." *Id.* at 456. She specifically noted "some memory problems, apparently," and how the last time he tried to work, in 2014, he "lasted" only around 90 days due to "mental health symptoms (i.e., depressed mood, anxiety)"

and was fired for "low 'job performance.'" *Id.* Her migraine Disability Benefits Questionnaire also included specific "functional impact" findings that Plaintiff's headache condition would impact his ability to work due to "distractibility problems," which he reportedly had at least two to three times a month. *Id.* Dr. Tzetzo opined that Plaintiff's symptoms were "at least as likely as not" caused by his 1990 in-service injury, explaining that he had "no clearcut head trauma problems" previously, and "he had no anger outbursts back then." *Id.* at 460.

Relatedly, about a year and a half later, psychologist Dr. Carol Jo Descutner conducted her own C&P examination of Plaintiff. *Id.* at 428. She likewise reviewed Plaintiff's VA medical records, including Dr. Tzezto's C&P examination and others from February and June 2016. *Id.* at 431. Dr. Descutner reported Plaintiff's diagnosis of persistent depressive disorder and noted that his "new wife" said he has periods of depressive symptoms, for example, not showering "for two to three days" at a time. *Id.* at 429. She reaffirmed that Plaintiff continued to meet DSM-5 criteria for persistent depressive disorder although in January 2020 he reported to "episodically" experiencing "amotivation, feeling sad, loss of interest, loss of appetite, anhedonia, unhappiness," and passive thoughts of suicide as opposed to "consistent[ly] experienc[ing] the same as of his C&P examination from a few weeks prior. *Id.* at 428, 432–34. She explained that his persistent depressive disorder is "relevant to the understanding or management of the . . . TBI diagnosed by Dr. Tzetzo" though the diagnoses are likely unrelated in cause. *Id.* at 430, 435, 438.

Dr. Descutner also reported that Plaintiff continued to report "anger and

irritability." *Id.* at 430. In responding to the C&P examination prompt of what "best summarizes the Veteran's level of occupation and social impairment with regards to all mental diagnoses," Dr. Descutner indicated "[o]ccupational and social impairment with reduced reliability and productivity." *Id.* When describing Plaintiff's relevant occupational history, she noted that Plaintiff was not currently employed and stated the following:

> The 6-29-19 prior C and P exam data is relevant, i.e.,:
> "The Veteran last worked at the VA as an escort and in maintenance through CWT. That opportunity has ended. He reports that he is not able to work due to back pain. He would like to go to school for architectural design and has looked into that to some degree."
> The 2016 Initial C and P exam data is relevant, i.e.:
> "Since his discharge from the military 25 years ago in 1990, the Veteran has had 10 jobs with the longest being for 8 years when self-employed from 1992-2000 in retail business. He has worked as a laborer, draftsman, and utility worker. He is not currently employed having stopped working in August[] 2013 due to being fired from position due to poor performance. The Veteran reported experiencing the following occupation problems due to mental health symptoms when he was employed: fired from 3-4 jobs (poor performance, verbal confrontation on [the] job, 'problems with my temper,' decreased concentration, inappropriate behavior, memory loss, poor social interaction. Veteran reported that he had difficulty completing task[s] at work due to mental health symptoms. Veteran reported that he missed work occasionally due to mental health symptoms."

*Id.* at 432. Dr. Descutner also recounted Plaintiff's military and legal history, which included several instances of disorderly conduct, fighting, and "misconduct." *Id.* at 433.

Lastly, as flagged by Plaintiff, Alice Barber conducted an in-person examination of Plaintiff in July 2019 to assess the utility of Plaintiff's elbows and forearms, the right of which suffered from "residuals of [a] fracture" that occurred in

14

1990. *Id.* at 441–42. PA Barber noted that she reviewed Plaintiff's VA file and prior C&P examinations as part of her examination. *Id.* at 442. She noted that Plaintiff had been diagnosed with osteoarthritis in his right elbow, that his dominant hand is his right hand, that he experiences flare-ups of his right elbow and forearm since his initial injury, and that her exam was being conducted when Plaintiff was actively experiencing a flare-up. *Id.* at 442–43, 446. PA Barber explained that Plaintiff "perceives decreased strength with continued activity which causes increased pain. He denies any specific limitation and functioning regarding his upper extremities at this time. He is not limited in his vocational work *as a retail merchant*." *Id.* at 442–43 (emphasis added). PA Barber noted that Plaintiff reported "pain with any repetitive use of the dominant r[ight] arm/elbow," and that her assessment of Plaintiff's "range of motion and functional limitation" was "abnormal or outside of normal range." *Id.* at 444; *see also id.* at 446 (noting Plaintiff reported that pain "significantly limit[s] functional ability with repeated use over a period of time"). PA Barber specifically noted that there was evidence of pain with weight bearing. *Id.* at 445; *see also id.* at 448 (also noting in her objective examination that Plaintiff's flexion and extension of the right elbow was not diminished); *id.* at 451 (noting "evidence of pain when the joint is used in non-weight bearing").

PA Barber also documented diagnostic testing of Plaintiff's right arm, which indicated "degenerative or traumatic arthritis" with "significant" findings or results. *Id.* at 449–50. Further, in response to the C&P examination question, "[r]egardless of the Veteran's current employment status, do the condition(s) listed in the Diagnosis

15

Section impact his or her ability to perform any type of occupational task (such as standing, walking, lifting, sitting, etc.)," PA Barber responded, "Yes." *Id.* at 450.

It is clear that the ALJ needed to consider Plaintiff's VA records, particularly the three C&P examinations discussed above. *See Biggins v. Comm'r of Soc. Sec.*, No. 18-CV-00643, 2019 WL 4688733, at *4 (W.D.N.Y Sept. 26, 2019); *Douglas G. K. v. Comm'r of Soc. Sec.*, No. 19-CV-06901, 2021 WL 9626219, at *4 (W.D.N.Y. Mar. 30, 2021). Generally, the SSA is not bound by a disability determination made by another governmental agency because other agency disability determinations are based on rules that differ from the ones used by the SSA in disability cases. 20 C.F.R. § 404.1504. However, the factual findings underlying disability determinations by non-SSA agencies are to be accorded consideration in proceedings before the SSA. SSR 06–03p, 2006 WL 2329939, at *7 (S.S.A. Aug. 9, 2006). The Second Circuit has routinely held that disability decisions of other governmental agencies are entitled to some weight. *See Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975) ("While the determination of another governmental agency that a social security disability benefits claimant is disabled is not binding on the Secretary, it is entitled to some weight and should be considered."); *Hankerson v. Harris*, 636 F.2d 893, 896–97 (2d Cir. 1980); *Stieberger v. Sullivan*, 738 F.Supp. 716, 744 (S.D.N.Y. 1990). The Commissioner's arguments that the C&P examinations by VA professionals are not "medical opinions" under SSA regulations are a red-herring and have been repeatedly rejected by courts in this Circuit. *See, e.g., Charles F. Comm'r of Soc. Sec.*, No. 19-CV-1664-LJV, 2021 WL 963585, at *2–3 (W.D.N.Y. Mar. 15, 2021).

16

The Court finds that the ALJ erred by ignoring Plaintiff's Compensation and Pension examinations. These examinations provided further evidence of mental and physical impairments that the ALJ either found non-severe or, in the case of Plaintiff's mobility limitations in his dominant arm, did not mention at all. They, among other things, opined on Plaintiff's lifting and carrying capacity and ability to follow instructions and otherwise manage relationships with co-workers and supervisors. Though the SSA is not bound by any ultimate disability determination by another federal agency, the factual findings contained in these VA examinations should have been addressed at step two and in formulating Plaintiff's RFC. *See* 20 C.F.R. § 404.1504. The error in failing to consider this evidence is particularly harmful where Plaintiff here would "grid out" if he found to be incapable of performing medium work. *See* 20 C.F.R. § 404, subpt. P, App. 2; *see also, e.g., Scott v. Berryhill*, No. 6:16-CV-06780-MAT, 2018 WL 652794, at *5 (W.D.N.Y. Dec. 14, 2018) (concluding failure to evaluate a Compensation and Pension examination opinion cannot be harmless because it is "highly relevant and probative").

Because remand of this matter for further administrative proceedings is necessary, the Court declines to reach Plaintiff's second argument. *See Douglas G. K.*, 2021 WL 9626219, at *5 (collecting cases).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 6, is granted, and the Commissioner's cross-motion for judgment on the pleadings, ECF No. 8, is denied. The matter is remanded under sentence four of 42

17

U.S.C. § 405(g) for further administrative proceedings consistent with this decision. The Clerk of Court is directed to enter judgment on behalf of Plaintiff and close this case.

    SO ORDERED.

Dated: March 31, 2025
       Rochester, New York

                                            HON. MEREDITH A. VACCA
                                            United States District Judge